## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

MICHELLE R.[1],
    Plaintiff,

    vs.

COMMISSIONER OF
SOCIAL SECURITY,
    Defendant.

Case No. 1:20-cv-1001

Barrett, J.

Litkovitz, M.J.

**REPORT AND**
**RECOMMENDATION**

Plaintiff Michelle R. brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) for judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying plaintiff's application for disability insurance benefits ("DIB"). This matter is before the Court on plaintiff's Statement of Errors (Doc. 16) and the Commissioner's response in opposition (Doc. 22).

## I. Procedural Background

Plaintiff filed an application for DIB on February 5, 2018, alleging disability beginning on August 1, 2014, due to Ehler's Syndrome, gastroparesis, fibromyalgia, chronic fatigue syndrome, chronic pain syndrome, hypertension, neuropathy, sciatica, osteoporosis, plantar fasciitis, posterior tibial tendon dysfunction, chronic migraines, heat sensitivity, glaucoma, esophageal motility disorder, anxiety, severe depression, cognitive loss/concentration loss, and lupus. (Tr. 265). The application was denied initially and upon reconsideration. Plaintiff,

---

[1] Pursuant to General Order 22-01, due to significant privacy concerns in social security cases, any opinion, order, judgment or other disposition in social security cases in the Southern District of Ohio shall refer to plaintiffs only by their first names and last initials.

through counsel, requested and was granted a *de novo* hearing before administrative law judge ("ALJ") Deborah Sanders. Plaintiff and a vocational expert ("VE") appeared and testified at the ALJ hearing on November 5, 2019. On January 24, 2020, the ALJ issued a decision denying plaintiff's DIB application. This decision became the final decision of the Commissioner when the Appeals Council denied review on October 14, 2020.

## II. Analysis

### A. Legal Framework for Disability Determinations

To qualify for disability benefits, a claimant must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 423(d)(1)(A). The impairment must render the claimant unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy. 42 U.S.C. § 423(d)(2).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process for disability determinations:

1) If the claimant is doing substantial gainful activity, the claimant is not disabled.

2) If the claimant does not have a severe medically determinable physical or mental impairment – *i.e.*, an impairment that significantly limits his or her physical or mental ability to do basic work activities – the claimant is not disabled.

3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.

4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.

> 5) If the claimant can make an adjustment to other work, the claimant is not
> disabled.  If the claimant cannot make an adjustment to other work, the claimant is
> disabled.

*Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009) (citing 20 C.F.R. §§

404.1520(a)(4)(i)-(v), 404.1520(b)-(g)).  The claimant has the burden of proof at the first four

steps of the sequential evaluation process.  *Id.*; *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548

(6th Cir. 2004).  Once the claimant establishes a prima facie case by showing an inability to

perform the relevant previous employment, the burden shifts to the Commissioner to show that

the claimant can perform other substantial gainful employment and that such employment exists

in the national economy.  *Rabbers*, 582 F.3d at 652; *Harmon v. Apfel*, 168 F.3d 289, 291 (6th

Cir. 1999).

## B.  The Administrative Law Judge's Findings

The ALJ applied the sequential evaluation process and made the following findings of

fact and conclusions of law:

> 1. The [plaintiff] last met the insured status requirements of the Social Security Act
> on September 30, 2018 (Exhibit 9D/1), and she does not meet the insured status
> requirements thereafter.
>
> 2. Based on the totality of the evidence, the [plaintiff] did not engage in SGA during
> the period from the alleged onset date of disability of August 1, 2014 through
> September 30, 2018, the date last insured (20 CFR 404.1571 *et seq.*).
>
> 3. Based on the objective medical evidence, the [plaintiff] has the following severe
> combination of impairments from the alleged onset date of disability through the
> date last insured: degenerative changes of the cervical, lumbar, and thoracic spine,
> degenerative joint disease of the right ankle and shoulders, bilateral prominent
> navicular tuberosity, posterior tibial tendon dysfunction with suspected lengthening
> tear left greater than right, calcaneovalgus deformity of the bilateral subtalar joints,
> bilateral subtalar joint arthrosis, dislocation, and subluxation, bilateral congenital

forefoot varus deformity, bilateral contracture tendon ankle, fibromyalgia, undifferentiated connective tissue disease, headaches, myofascial pain syndrome, Bell's palsy, hypertension, osteoporosis, vitamin D deficiency, obesity, vaginal prolapse with subsequent mesh and sling removal procedure, and depressive, anxiety, and somatoform disorders (20 CFR 404.1520(c)).

4. Based on the objective medical evidence, the [plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of the criteria of any Listings in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, it is determined that from the alleged onset date of disability through the date last insured, the [plaintiff] has the residual functional capacity to perform sedentary[] work as defined in 20 CFR 404.1567(a), and she can lift no more than 10 pounds frequently. She can stand and/or walk for up to 6 hours in an 8-hour workday. She can sit for up to 6 hours in an 8-hour workday. Climbing ramps and stairs, crawling, crouching, kneeling, stooping, overhead reaching with the right upper extremity, and exposure to extreme cold, are each limited to no more than occasionally. She cannot climb ladders, ropes and scaffolds, work at unprotected heights, and operate commercial motor vehicles, and must avoid all exposure to dangerous machinery. Mentally, the [plaintiff] retains the capacity to understand, remember, and carry out simple repetitive routine tasks with no fast production rate pace and strict production quotas, and adapt to an environment with infrequent changes if such changes are explained in advance. She can occasionally interact with co-workers but cannot perform shared or tandem tasks. She can occasionally interact with supervisors in a setting with no over the shoulder supervision. She can occasionally interact with members of the general public, but cannot work in a customer service capacity.

6. Based on the [plaintiff]'s residual functional capacity from the alleged onset date of disability through the date last insured, she cannot perform her past relevant work (20 CFR 404.1565).[2]

7. The [plaintiff] was born . . . [in] 1973, and is defined as a younger individual age 18-44 at all times relevant from the alleged onset date of disability through the date last insured (20 CFR 404.1563).

---

[2] Plaintiff's past relevant work was a housekeeping cleaner, an unskilled, light position; administrative clerk/office manager, a light, semiskilled position; and composite job consisting of a cashier (light/unskilled) and inventory clerk (medium/semiskilled). (Tr. 71, 116-17).

8. The [plaintiff] has at least a high school education and can communicate in English (20 CFR 404.1564) (Exhibits 8F/205 and 490, and 1E/1 and 3, and testimony).

9. Transferability of job skills is not material to the determination of disability, because using the Medical-Vocational Rules as a framework supports a finding that the [plaintiff] is not disabled, whether or not she has transferable job skills (SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the [plaintiff]'s age, education, work experience, and residual functional capacity from the alleged onset date of disability through the date last insured, jobs exist in significant numbers in the national economy that she can perform (20 CFR 404.1569 and 404.1569a).[3]

11. Because jobs exist in significant numbers in the national economy that the [plaintiff] can perform, she is not disabled as defined in the Social Security Act from August 1, 2014, the alleged onset date of disability, through September 30, 2018, the date last insured (20 CFR 404.1520(g)).

(Tr. 17-73).

## C.  Judicial Standard of Review

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g) and involves a twofold inquiry: (1) whether the findings of the ALJ are supported by substantial evidence, and (2) whether the ALJ applied the correct legal standards.  *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007).

The Commissioner's findings must stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Biestek v. Berryhill*,

---

[3] The ALJ relied on the VE's testimony to find that plaintiff would be able to perform the requirements of representative sedentary, unskilled occupations such as printed circuit board touchup screener (55,500 jobs nationally), laminator, I (47,500 jobs nationally), and film touchup inspector (52,500 jobs nationally).  (Tr. 72-73, 121).

___ U.S. ___, 139 S. Ct. 1148, 1154 (2019) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305

U.S. 197, 229 (1938)).  Substantial evidence consists of "more than a scintilla of evidence but

less than a preponderance. . . ."  *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir.

2007).  In deciding whether the Commissioner's findings are supported by substantial evidence,

the Court considers the record as a whole.  *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

The Court must also determine whether the ALJ applied the correct legal standards in the

disability determination.  Even if substantial evidence supports the ALJ's conclusion that the

plaintiff is not disabled, "a decision of the Commissioner will not be upheld where the SSA fails

to follow its own regulations and where that error prejudices a [plaintiff] on the merits or

deprives the [plaintiff] of a substantial right."  *Rabbers*, 582 F.3d at 651 (quoting *Bowen*, 478

F.3d at 746).

### D.  Specific Errors

In a nearly sixty-page decision, the ALJ found that plaintiff is not disabled within the

meaning of the Social Security Act from August 1, 2014, the alleged onset date of disability,

through September 30, 2018, the date last insured.  (Tr. 15-74).  In light of plaintiff's nearly

thirty "severe" impairments, the ALJ comprehensively and exhaustively examined the medical

evidence of record and concluded that jobs exist in significant numbers in the national economy

that plaintiff can perform.  (*Id*.).  Despite the ALJ's thorough analysis, plaintiff alleges that the

ALJ erred "in analyzing the severe, medically determinable impairment of fibromyalgia."  (Doc.

16 at PAGEID 2248).  Plaintiff "alleges that the ALJ's analysis of [plaintiff's] fibromyalgia

impairment is erroneous" because "the ALJ relies *significantly* on normal or mild objective test

results and normal or mild physical exam results" in finding that plaintiff was not disabled. (*Id*. at PAGEID 2250-51) (emphasis in original). Specifically, plaintiff argues that because normal exam findings and diagnostic tests are "irrelevant to an analysis of a fibromyalgia diagnosis and its corresponding functional impairments[,] . . . the case law indicates the nature of fibromyalgia places a premium on the credibility analysis." (*Id*. at PAGEID 2252). Plaintiff argues that the ALJ erred because "nowhere in the opinion does the ALJ *explicitly* address [plaintiff's] credibility, and specifically the credibility of her complaints related to fibromyalgia." (*Id*.) (emphasis in original). Plaintiff also alleges that the ALJ erred in formulating the RFC by "not analyz[ing] fibromyalgia separately." (*Id*. at PAGEID 2249). Further, plaintiff alleges that the ALJ erred in evaluating the opinions contained in the 2019 functional capacity evaluation ("FCE") completed by physical therapist Cynthia Lear and co-signed by Dr. Lee, a treating physician. (*Id*. at PAGEID 2249-50).

The Commissioner argues that the ALJ's decision is supported by substantial evidence because the ALJ properly evaluated plaintiff's fibromyalgia, among her other impairments. (Doc. 22). The Commissioner contends that the ALJ properly considered whether fibromyalgia equaled Listing 14.09 and discussed plaintiff's activities of daily living, testimony, and reports to healthcare professionals in addition to the objective medical evidence of record. (*Id*.). The Commissioner also argues that the ALJ properly applied the two-step process when evaluating plaintiff's subjective allegations of pain and limitations. (*Id*. at PAGEID 2281-82). The Commissioner alleges the ALJ properly "considered Plaintiff's subjective complaints along with the medical and non-medical evidence and explained why her complaints were not persuasive."

7

(*Id*. at PAGEID 2282, citing Tr. 18-71).  The Commissioner asserts the ALJ considered the combined effects of plaintiff's impairments when assessing her RFC as required by the regulations.  (*Id*. at PAGEID 2283, citing 20 C.F.R. § 404.1523(c)).  Finally, the Commissioner argues that the ALJ's analysis of Ms. Lear's opinions contained in the July 2019 FCE is supported by substantial evidence.  (*Id*. at PAGEID 2283-85).

### 1.  The ALJ's analysis of plaintiff's severe impairment of fibromyalgia

At the outset, to the extent plaintiff argues that the ALJ erred by "address[ing] all of the physical impairments together" and "not analyz[ing] fibromyalgia separately" in the RFC (Doc. 16 at PAGEID 2249), plaintiff's argument is without merit.  As the Commissioner correctly notes (Doc. 22 at PAGEID 2283), in assessing a claim for disability, the ALJ must analyze "the combined effect of all of the claimant's impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity to render the claimant disabled." *Walker v. Sec'y of H.H.S.*, 980 F.2d 1066, 1071 (6th Cir. 1992) (citing 20 C.F.R. § 404.1523). *See also* SSR 85-28, 1985 WL 56856, at *3 ("Under 20 CFR, sections 404.1523 and 416.923, when assessing the severity of whatever impairments an individual may have, the adjudicator must assess the impact of the combination of those impairments on the person's ability to function, rather than assess separately the contribution of each impairment to the restriction of his or her activity as if each impairment existed alone.").  In *Walker*, the Sixth Circuit found that the ALJ erred by analyzing each of the plaintiff's impairments in isolation and never considering whether their combined impact would be severe enough to render the plaintiff disabled. *Walker*, 980 F.2d at 1071.  Here, the ALJ did not err by failing to analyze fibromyalgia

separately in assessing plaintiff's RFC.  The ALJ properly addressed all of plaintiff's

impairments in combination in determining that plaintiff was not disabled within the meaning of

the Social Security Act.

Plaintiff next argues that the ALJ's decision is not supported by substantial evidence

because "the ALJ relies *significantly* on normal or mild objective test results and normal or mild

physical exam results" in finding that plaintiff was not disabled.  (Doc. 16 at PAGEID 2251)

(emphasis in original).  Plaintiff contends that "negative/normal exams and normal/mild

objective test[s]/diagnostic findings . . . are irrelevant to an analysis of a fibromyalgia diagnosis

and its corresponding functional impairments."  (*Id*. at PAGEID 2252).

The Sixth Circuit requires an ALJ to "give due consideration to [a plaintiff's] diagnosis

of severe fibromyalgia," and has "repeatedly recognized that fibromyalgia can be a severe and

disabling impairment."  *Minor v. Comm'r of Soc. Sec.*, 513 F. App'x 417, 434 (6th Cir. 2013)

(citing *Rogers*, 486 F.3d at 243 (in turn citing *Preston v. Sec'y of H.H.S.*, 854 F.2d 815, 820 (6th

Cir. 1988) (per curiam); *see also Kalmbach v. Comm'r of Soc. Sec.*, 409 F. App'x 852, 859-60

(6th Cir. 2011); *Germany-Johnson v. Comm'r of Soc. Sec.*, 313 F. App'x 771, 778 (6th Cir.

2008) (per curiam)).  Fibromyalgia "causes severe musculoskeletal pain which is accompanied

by stiffness and fatigue due to sleep disturbances."  *Preston*, 854 F.2d at 817.  "[D]isability

claims related to fibromyalgia are related to the *symptoms* associated with the condition -

including complaints of pain, stiffness, fatigue, and inability to concentrate - rather than the

underlying condition itself."  *Kalmbach*, 409 F. App'x at 862 (emphasis in original) (citing

*Rogers*, 486 F.3d at 247) (in turn citing 20 C.F.R. § 416.929); *Wyatt v. Sec'y of Health & Human*

*Servs.*, 974 F.2d 680, 686 (6th Cir. 1992) (noting that subjective complaints of pain may support a claim for disability)).

SSR 12-2p provides guidance on how the agency both develops evidence to establish that a person has a medically determinable impairment of fibromyalgia and evaluates fibromyalgia in disability claims.  SSR 12-2p, 2012 WL 3104869, at *2 (July 25, 2012).  SSR 12-2p describes fibromyalgia as "a complex medical condition characterized primarily by widespread pain in the joints, muscles, tendons, or nearby soft tissues that has persisted for at least 3 months."  *Id*.  SSR 12-2p explains that fibromyalgia is a "common syndrome" and that a person's symptoms must be considered when the agency decides if the individual has a medically determinable impairment of fibromyalgia.  *Id*.

Contrary to plaintiff's argument that normal examination findings and diagnostic testing "are irrelevant to an analysis of a fibromyalgia diagnosis and its corresponding functional impairments" (Doc. 16 at PAGEID 2252), this Court has found that "[o]bjective evidence is not wholly irrelevant merely because a claimant suffers from a condition like fibromyalgia.  Thus, SSR 12-2p continues to require 'sufficient *objective evidence* to support a finding that the person's impairment(s) so limits the person's functional abilities that it precludes him or her from performing any substantial gainful activity.'"  *Clemow v. Comm'r of Soc. Sec.*, No. 1:20-cv-592, 2021 WL 6125021, at *4 (S.D. Ohio Dec. 28, 2021) (emphasis in original) (quoting SSR 12-2p, 2012 WL 3104869, at *2).

It is undisputed that the ALJ accepted plaintiff's diagnosis of fibromyalgia and considered it a severe impairment at Step Two of the sequential evaluation process.  (*See* Tr. 18:

"The evidence documents the clinical diagnosis of fibromyalgia, with multiple tender points upon physical examination at different times (Exhibits 5F/9, 8F/5, 54, 70, 213, and 514, and 9F/24).").  Plaintiff's fibromyalgia diagnosis did not preclude the ALJ from considering the objective medical evidence when evaluating whether plaintiff could sustain full-time employment because fibromyalgia is only one of numerous "severe" impairments the ALJ found. (Tr. 18.  In addition to fibromyalgia, the ALJ found that plaintiff suffers from degenerative changes of the cervical, lumbar, and thoracic spine, degenerative joint disease of the right ankle and shoulders, bilateral prominent navicular tuberosity, posterior tibial tendon dysfunction with suspected lengthening tear left greater than right, calcaneovalgus deformity of the bilateral subtalar joints, bilateral subtalar joint arthrosis, dislocation, and subluxation, bilateral congenital forefoot varus deformity, bilateral contracture tendon ankle, undifferentiated connective tissue disease, headaches, myofascial pain syndrome, Bell's palsy, hypertension, osteoporosis, vitamin D deficiency, obesity, vaginal prolapse with subsequent mesh and sling removal procedure, and depressive, anxiety, and somatoform disorders.  (*Id*.).

As explained above, the ALJ was *required* to consider "the combined effect of all of the claimant's impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity to render the claimant disabled."  *Walker*, 980 F.2d at 1071 (citing 20 C.F.R. § 404.1523).  Accordingly, the ALJ properly discussed evidence of normal objective testing and physical examination results in light of plaintiff's other "severe" impairments, in addition to plaintiff's appearance, reports to healthcare professionals, and her daily and social activities.  Without such an analysis, the ALJ would, in essence, be disregarding

all of plaintiff's other numerous "severe" impairments in the disability determination.  Moreover, the record does not reflect that any of the physicians of record separated plaintiff's fibromyalgia from her other impairments in assessing plaintiff's level of functioning.  (*See, e.g.*, Tr. 131, 136-39, 149, 152, 157-58, 167-69: where the state agency reviewing physicians considered plaintiff's fibromyalgia, in addition to her other listed impairments, as part of the review of the medical evidence of record).

Nonetheless, the ALJ did not rely primarily on mild or normal objective findings in analyzing plaintiff's severe impairment of fibromyalgia.  Instead, the ALJ discussed plaintiff's appearance, reports to healthcare professionals, and her daily and social activities.  (*See* Tr. 29-30, 33).  Specifically, the ALJ stated that plaintiff repeatedly endorsed fairly good health, presented as well and not ill or sickly appearing, and denied chronic back, neck pain, and edema, and at times, chronic fatigue and malaise.  (Tr. 29).  The ALJ noted that plaintiff described daily exercise for up to 30 minutes in April 2017.  (*Id*.).  The ALJ also discussed plaintiff's activities of daily living and noted that plaintiff prepares coffee and meals and performs household chores and cleaning such as laundry.  (*Id*.).  The ALJ further described that plaintiff drives, receives rides from others, and shops in nearby stores and by computer.  (*Id*.).  The ALJ also noted that plaintiff took care of her ill father-in-law during the relevant time period, attended church services, participated in church activities, and dined out at restaurants.  (Tr. 29-30, 33).

Therefore, the record shows that the ALJ did not *solely* rely on normal examination findings and diagnostic testing in assessing plaintiff's RFC.  Moreover, although plaintiff argues that the ALJ erred in relying on objective testing, plaintiff also "concedes that the ALJ does not

rely *only* on negative/normal physical exams and objective testing in analyzing the fibromyalgia impairment." (Doc. 16 at PAGEID 2252) (emphasis in original). Thus, plaintiff has not shown that the ALJ violated SSR 12-2p or otherwise erred in evaluating her fibromyalgia impairment.

Plaintiff also argues that the ALJ erred in analyzing her fibromyalgia impairment because "the case law indicates the nature of fibromyalgia places a premium on the credibility analysis" and "nowhere in the opinion does the ALJ *explicitly* address [plaintiff's] credibility, and specifically the credibility of her complaints related to fibromyalgia." (*Id.*) (emphasis in original).

The Commissioner argues that the ALJ properly evaluated plaintiff's subjective allegations of pain and limitations, and the ALJ properly concluded that plaintiff's "allegations of disabling pain were inconsistent with and unsupported by the totality of the evidence." (Doc. 22 at PAGEID 2281, citing Tr. 39). The Commissioner also contends that the ALJ properly "considered Plaintiff's subjective complaints along with the medical and non-medical evidence and explained why her complaints were not persuasive." (*Id.* at PAGEID 2282, citing Tr. 18-71).

ALJs are to "consider all of the evidence in an individual's record" and determine whether the individual is disabled by examining "all of the individual's symptoms, including pain, and the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence in the individual's record." SSR 16-3p, 2016 WL 1119029, at *2. ALJs also evaluate what the agency formerly termed the "credibility" of a plaintiff's statements about his or her symptoms. *See, e.g.*, *Rogers*, 486 F.3d at 246-49. In

March 2016, the agency eliminated its use of the term "credibility" and clarified "that subjective symptom evaluation is not an examination of an individual's character. . . ."  SSR 16-3p, 2016 WL 1119029, at *1 (Mar. 16, 2016) (rescinding and superseding SSR 96-7p).  To avoid such mistaken emphasis, this analysis is now characterized as the "consistency" of a claimant's subjective description of symptoms with the record.  *See Lipanye v. Comm'r of Soc. Sec.*, 802 F. App'x 165, 171 n.3 (6th Cir. 2020) (citing *Dooley v. Comm'r of Soc. Sec.*, 656 F. App'x 113, 119 n.1 (6th Cir. 2016)).

A two-step inquiry applies to symptom evaluation.  The ALJ first determines if the record contains objective medical evidence of an underlying medically determinable impairment that could reasonably be expected to produce the individual's symptoms.  SSR 16-3p, 2016 WL 1119029, at *3; *see also* 20 C.F.R. § 404.1529(a); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475-76 (6th Cir. 2003).  Step two of symptom evaluation shifts to the severity of a claimant's symptoms.  The ALJ must consider the intensity and persistence of the symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities. *See* 20 C.F.R. §§ 404.1529(a) and (c); SSR16-3p, 2016 WL 1119029, at *4.  In making this determination, the ALJ will consider the following:

(i) Your daily activities;

(ii) The location, duration, frequency, and intensity of your pain or other symptoms;

(iii) Precipitating and aggravating factors;

(iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms;

14

(v)     Treatment, other than medication, you receive or have received for relief of your pain or other symptoms;

(vi)    Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and

(vii)   Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. § 404.1529(c)(3).

An ALJ may not consider only objective medical evidence in determining disability unless this evidence alone supports a finding of disability. SSR 16-3p, 2016 WL 1119029, at *5 ("If we cannot make a disability determination or decision that is fully favorable based solely on objective medical evidence, then we carefully consider other evidence in the record in reaching a conclusion about the intensity, persistence, and limiting effects of an individual's symptoms."); 20 C.F.R. § 404.1529(c)(2) ("[W]e will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements."). Moreover,

> [i]t is . . . not enough for our adjudicators simply to recite the factors described in the regulations for evaluating symptoms. The determination or decision must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms.

SSR 16-3p, 2016 WL 1119029, at *9. *See also Id.* at *7 (noting that the ALJ "will discuss the factors pertinent to the evidence of record").

15

At the same time, the ALJ is not required to cite or discuss every factor used to evaluate the consistency of a plaintiff's description of symptoms with the record evidence.  *See White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 287 (6th Cir. 2009).  Further, the ALJ's determination regarding the consistency of a claimant's subjective complaints with the record evidence is "to be accorded great weight and deference. . . ."  *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997) (citing *Villarreal v. Sec'y of H.H.S.*, 818 F.2d 461, 463 (6th Cir. 1987)).[4]

Although plaintiff alleges that the ALJ failed to "*explicitly* address [plaintiff's] credibility, and specifically the credibility of her complaints related to fibromyalgia" (Doc. 16 at PAGEID 2252) (emphasis in original), the record demonstrates that the ALJ properly applied the two-step process in evaluating plaintiff's subjective allegations of pain and limitations.  (*See* Tr. 38-39).  The ALJ specifically concluded that plaintiff's "medically determinable impairments could possibly be expected to cause some of the alleged symptoms; however, her statements concerning the intensity, persistence, and limiting effects of these symptoms are not sufficiently supported by the medical evidence and other evidence in the record."  (Tr. 39).  Further, the ALJ applied the requisite factors set forth in 20 C.F.R. § 404.1529 and concluded that plaintiff's "allegations of disability due to her medical impairments are inconsistent with and unsupported by the totality of the evidence."  (*Id*.).  The ALJ exhaustively examined the record, including allegations relating to the intensity and persistence of plaintiff's symptoms, and reasonably

---

[4] The *Walters* court noted that substantial deference was appropriate due in large part to an ALJ's unique observation of a witness's "demeanor and credibility."  With the elimination of the term "credibility" in SSR 16-3p, it is questionable whether an ALJ's observations should be given any deference.  At least one Sixth Circuit decision subsequent to the enactment of SSR 16-3p, however, has retained the notion of deference to the ALJ in the symptom-consistency context.  *See, e.g., Lipanye*, 802 F. App'x at 171 ("It is for the administrative law judge, not the reviewing court, to judge the consistency of a claimant's statements.").

determined that plaintiff can perform work activity without difficulties with the functional limitations and restrictions set forth in the RFC from the alleged onset date of disability through the date last insured. (*See* Tr. 38-71). The ALJ cited to not only objective medical evidence but plaintiff's self-reports to her medical providers and others in concluding that plaintiff's statements about the intensity and limiting effects of her symptoms are not entirely consistent with her reported abilities. (Tr. 39-41). For example, the ALJ considered plaintiff's reports to her medical providers that she had fairly good health, was independent with transfers, did not demonstrate chronic back and neck pain, and denied fatigue and malaise at times. (Tr. 39-40). The ALJ also considered plaintiff's daily exercising of walking for up to 30 minutes in April 2017, and plaintiff's demonstrated tendency to over-report and magnify her physical symptoms. (*Id.*).

After comprehensively examining the medical evidence of record and plaintiff's subjective allegations of pain and limitations, the ALJ stated:

> In summary, while the claimant has medically determinable impairments that could reasonably cause some symptoms and limitations, the above evidence shows that her statements regarding the extent of such symptoms and limitations are not fully supported. However, the claimant's complaints have not been completely dismissed, but rather, have been included in the residual functional capacity to the extent that they are consistent with the evidence as a whole. Nevertheless, in considering the criteria enumerated in the Regulations, Rulings, and case law for evaluating the claimant's subjective complaints, her statements were not persuasive to establish an inability to perform the range of work assessed herein. The location, duration, frequency, and intensity of the claimant's alleged symptoms, as well as precipitating and aggravating factors are adequately addressed and accommodated in the residual functional capacity assessed herein.
>
> Considering the objective medical evidence, the claimant's activities[,] and the medical opinions, it is determined that her subjective complaints and alleged

limitations are not fully persuasive, and that she retains the capacity to perform work activities with the limitations assessed herein.

(Tr. 70-71). Accordingly, to the extent that plaintiff argues that the ALJ failed to evaluate plaintiff's subjective allegations of pain and limitations, plaintiff's argument is belied by the record.

Moreover, it was the ALJ's duty, and not this Court's, to weigh the conflicting evidence and assess the consistency of plaintiff's subjective complaints. *See Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 414 (6th Cir. 2011) (citing *Youghiogheny & Ohio Coal Co. v. Webb*, 49 F.3d 244, 246 (6th Cir. 1995)). *See also Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 392 (6th Cir. 2004) ("The administrative law judge justifiably considered [plaintiff's] ability to conduct daily life activities in the face of his claim of disabling pain."); *Keeton v. Comm'r of Soc. Sec.*, 583 F. App'x 515, 532 (6th Cir. 2014) (citing 20 C.F.R. § 404.1572 and quoting *Walters*, 127 F.3d at 532) ("Although the ability to [perform activities of daily living] is not direct evidence of an ability to do gainful work, '[a]n ALJ may . . . consider [such] activities . . . in evaluating a claimant's assertions of pain or ailments.'").

The ALJ here considered a number of factors in determining symptom severity, including the objective medical evidence, plaintiff's daily activities, plaintiff's reports to medical providers, and clinical findings on examination. The ALJ's decision in this regard finds substantial support in the record, and plaintiff's assignment of error concerning the ALJ's alleged failure to evaluate plaintiff's subjective allegations of pain and limitations should be overruled. *See Clemow*, 2021 WL 6125021, at *4 ("As with many other common conditions, an ALJ may find fibromyalgia to be a severe impairment, but still appropriately discredit the plaintiff's

subjective claims that it is disabling." (citing *Luukkonen v. Comm'r of Soc. Sec.*, 653 F. App'x 393, 400 (6th Cir. 2016)).

### 2. The ALJ's evaluation of the opinions contained in the functional capacity evaluation completed by physical therapist Ms. Lear

Plaintiff alleges the ALJ erred in evaluating the persuasiveness of the July 19, 2019 "functional capacity evaluation co-signed by the treating physician, Dr. Lee" when "Dr. Lee listed fibromyalgia as the first diagnosis."  (Doc. 16 at PAGEID 2249).  Plaintiff alleges Dr. Lee "relied heavily on the impairment of fibromyalgia" for her opinion.  (*Id.*).  Contrary to plaintiff's argument, Dr. Lee listed eight separate diagnoses: "fibromyalgia, somatoform disorder, hypertension, osteoporosis, anxiety, depression, partial-thickness tear of right rotator cuff s/p repair (7/11/19), vitamin B12 deficiency" in her "Physical Capacity Evaluation" form.  (Tr. 2145).  There is no evidence that Dr. Lee "relied heavily" on plaintiff's symptoms from fibromyalgia.  Indeed, in her letter to plaintiff in response to plaintiff's question about the FCE, Dr. Lee provided "clarification" about plaintiff's *numerous* impairments and the inconsistencies between the restrictions in the FCE and plaintiff's medical records.  (Tr. 2152-53).  For example, Dr. Lee noted that plaintiff incorrectly reported that her "physician" told her to "do minimal exercise."  (Tr. 2153).  Dr. Lee, however, stated that she "strongly recommend[ed] regular exercise" and her "doctors have recommended that [plaintiff] keep up with physical activity and do regular exercise."  (*Id.*).  In addition, on the FCE form itself, Dr. Lee wrote that "[s]ome of the patient reported information is erroneous."  (Tr. 2148).  The ALJ considered the consistency and supportability of the FCE findings in an exhaustive analysis of not only the objective evidence but plaintiff's subjective reports of symptoms (Tr. 50-53) and reasonably concluded:

These opinions are inconsistent with and unsupported by the totality of the evidence, as discussed above, which documents that the claimant demonstrated tendency to over-report and magnify physical symptoms to a degree that is rarely described by individuals with significant medical problems upon neuropsychological testing (Exhibit 8F/494-495), which would not be expected if her physical impairments *and related symptoms are as severe as* she purports from the alleged onset date of disability through the date last insured. This evidence does not reasonably justify greater physical functional limitations and restrictions, and could support a determination that the claimant is less physically limited than set forth above from the alleged onset date of disability through the date last insured. *Additionally, these opinions are based on testing conducted nearly a year after the expiration of insured status, and there is no evidence they are accurate representations of the claimant's physical functioning prior to the expiration of insured status.*

(Tr. 53) (emphasis added).

Further, as the Commissioner correctly notes (Doc. 22 at PAGEID 2283-84), Ms. Lear's opinion, i.e., "At this time, [plaintiff] [r]emains un-likely to sustain employment" (Tr. 2147) amounts to an issue reserved to the Commissioner based on Social Security rules and regulations. Whether a person is disabled within the meaning of the Social Security Act, i.e., unable to engage in substantial gainful activity, is an issue reserved to the Commissioner, and a medical source's opinion that her patient is "disabled" or "unable to work" is not "giv[en] any special significance." 20 C.F.R. § 404.1527(d)(3). *See Bass v. McMahon*, 499 F.3d 506, 511 (6th Cir. 2007) (opinion by medical source on issues reserved to Commissioner is never entitled to controlling weight or special significance); *see also Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004). Therefore, the ALJ reasonably found that Ms. Lear's opinion that plaintiff would be unable to sustain employment is unpersuasive. Accordingly, the ALJ's evaluation of the opinions contained in the July 19, 2019 FCE is supported by substantial evidence, and plaintiff's assignment of error relating to such opinions should be overruled.

**IT IS THEREFORE RECOMMENDED THAT:**

For the reasons stated herein, plaintiff's Statement of Errors (Doc. 16) be

**OVERRULED**, and the Commissioner's non-disability finding be **AFFIRMED**.  **IT IS**

**FURTHER RECOMMENDED** that judgment be entered in favor of the Commissioner and this

case be closed on the docket of the Court.


Date: 8/15/2022

Karen L. Litkovitz
Chief United States Magistrate Judge

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

MICHELLE R.,                                    Case No. 1:20-cv-1001
      Plaintiff,                           Barrett, J.
                                                Litkovitz, M.J.

      vs.

COMMISSIONER OF
SOCIAL SECURITY,
      Defendant.

## NOTICE

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations.  This period may be extended further by the Court on timely motion for an extension.  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).